IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRADY JACKSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-272 Erie |
| ) | JUDGE SEAN McLAUGHLIN |
| WARDEN JAMES SHERMAN, ) | CHIEF MAGISTRATE JUDGE BAXTER |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is recommended that the Petition for Writ of Habeas Corpus filed by a federal prisoner pursuant to 28 U.S.C. §2241 be denied.

**II.    REPORT**

Grady Jackson is a federal prisoner who asserts that he was not properly given credit against his federal sentence for time spent in state custody. The Government has responded to the petition (Docket #10), and Petitioner filed a traverse (Docket #12). Respondent filed a sur-reply (Docket # 15), and Petitioner got in the last word (Docket #18). The petition is now ripe for disposition. Resolution of the dispute in this matter requires a close reading of Petitioner's arrest history and the records reflecting Petitioner's repeated transfers between federal and Commonwealth of Pennsylvania institutions in 1993 and 1994. Petitioner asserts that he was in federal "primary custody" during this period and, accordingly, argues that service of his federal sentence was interrupted by his transfer to Pennsylvania custody for service of his state sentence, entitling him to credit for time served since 1993.

**A. Subject matter jurisdiction.**

Initially the Court notes that, although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning execution of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir.1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir.), cert. denied, 429 U.S. 851 (1976). Petitioner is held under the authority of the Bureau of Prisons (BOP) which is entrusted with calculating Petitioner's sentence. Because Petitioner is primarily challenging the terms (i.e., execution) of his sentence, his habeas petition is properly brought under 28 U.S.C. § 2241.

**B.    Exhaustion.**

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his or her claim to federal court. United States v. Wilson, 503 U.S. 329, 334-35, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir.1996); United States v. Keller, 58 F.3d 884 (2d Cir.1995); United States v. Brann, 990 F.2d 98, 104 (3d Cir.1993). The Bureau of Prisons is the agency charged with administering the federal prison system. Reno v. Koray, 515 U.S. 50, 57, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995); Wilson, 503 U.S. at 334-335. For federal prisoners challenging Bureau of Prisons determinations, the initial venue is the administrative process. The Bureau of Prisons codified its Administrative Remedy Program ("ARP") in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement. Respondent concedes that Petitioner has pursued an appeal of the challenged action through all levels of administrative review and, hence, available administrative remedies have been exhausted in this case.

**C.    Relevant Facts.**

A copy of Petitioner's NCIC report (Docket # 18, Exhibit 1, Document 1) and other supporting documents, reflect the following history of arrests and convictions for the relevant time period:

> 1).  Petitioner Jackson was arrested by Commonwealth of Pennsylvania authorities on February 2, 1993, and was charged with theft and related offenses alleged to have occurred that same date (Id.). These charges were dismissed on March 26, 1993.
>
> 2)  Petitioner was again arrested by Commonwealth authorities on February 10, 1993, and was charged with robbery and related offenses alleged to have occurred on February 8, 1993 (Id.). These charges were dismissed in favor of federal prosecution on February 19, 1993 (Id.).[1]
>
> 3)  Also on February 19, 1993, Petitioner was arrested and charged by the Commonwealth with an unrelated robbery alleged to have occurred on January 6, 1993 (Id.). Petitioner ultimately was found guilty after a jury trial on December 16, 1993, and was sentenced by the state court to 5 to 10 years incarceration on February 1, 1994 (Id.; Docket #15, Exhibit 2).
>
> 4)  Petitioner was charged in federal court on March 16, 1993, with armed carjacking and related offenses for an incident which occurred on February 8, 1993 (Docket #10, Exhibits A and B). He was "arrested" on these charges on March 25, 1993, at a time when he was already in custody on state charges (Docket #15, Exhibit 3). He was found guilty on October 1, 1993, and was sentenced on April 15, 1994 to 240 months imprisonment (Docket #10, Exhibits A and B). The sentencing court expressly made the sentence consecutive to the Pennsylvania sentence already imposed (Docket #10, Exhibit F).

During the time period from Petitioner's first arrest by the Commonwealth of Pennsylvania on February 2, 1993, until his federal sentence was imposed in April 1994, Petitioner was transferred back and forth between physical federal and state custody several times. He was first in physical federal custody on March 25, 1993, when he was "arrested" on the March 16, 1993, federal indictment (Docket #15, Exhibit 3). He was held in federal custody until August 17, 1993, when he was returned to state custody (Id.). He was again in a federal facility from September 27, 1993, until December 3, 1993, when he was returned to state custody. Petitioner was again returned to federal custody for his sentencing proceeding on April 15, 1994, at which time he was immediately returned to SCI Graterford (Id.). There is dispute between the parties concerning the manner of Petitioner's transfers from federal institutions to state, and whether they were accomplished by Writ of Habeas

---

[1] The NCIC read-out does not indicate why the charges were dismissed. Both Petitioner and Respondent agree, however, that the underlying offenses are the source of Petitioner's federal conviction (Docket #1, page 4; Docket #15 ¶4).

3

Corpus ad Prosequendum or not. The record does not contain copies of such writs. It is not disputed, however, that Petitioner was returned to Pennsylvania custody after his federal sentence was imposed, and that he served his state sentence, as well as a parole violation sentence, before being paroled by Pennsylvania on September 22, 2004.

The respective sovereigns have given Petitioner credit for time serve as follows: (1) the Commonwealth of Pennsylvania has given Petitioner credit for time served for February 21, 1993, through March 26, 1993, and from August 17, 1993, through February 1, 1994, and for all time from February 2 through September 22, 2004 (Docket #10, Exhibit M); (2) the Bureau of Prisons has given Petitioner credit against his federal sentence for time spent in custody from February 10, 1993 through February 20, 1993, and from March 27, 1993, through August 16, 1993, as well as all time after September 22, 2004 (Docket #10, Exhibit C).

Petitioner argues that he was in primary federal custody beginning February 19, 2003, because he was released on bail by Pennsylvania authorities on February 3, 1993, after his February 2, 1993 arrest, and that he was again released by Pennsylvania on February 19, 2003, when state charges were dropped in favor of federal prosecution. He argues that his federal sentence commenced upon his federal conviction in October 1993, and that he should receive pre-sentence credit for all time spent in custody since that time.

### D.     Analysis.

In a habeas proceeding where computation of a federal sentence is at issue, a court must consider two separate issues. First, the court must establish when the federal sentence commences; and second, the court must determine the extent to which the petitioner may be entitled to credit for time spent in custody prior to commencement of the sentence. Chambers v. Holland, 920 F.Supp.618, 621 (E.D.Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996). This is so since the applicable statute applies different standards to time served after a federal sentence commences, and time served prior to that time. 18 U.S.C. §3585.

The first inquiry, concerning the commencement of the federal sentence, is governed by 18 U.S.C. § 3585(a):

4

> **(a) Commencement of sentence**.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

Here, the federal sentence "commenced" when Jackson, who had been in state custody, was paroled to a federal detainer on September 22, 2004. Petitioner attempts to establish that his sentence commenced when imposed in April 1994, but his argument is based on a faulty reading of the record and applicable law.

The crux of Petitioner's argument is that his federal sentence "commenced" in 1993 and was improperly interrupted by his transfer to state custody. He is asserting his right to uninterrupted service of his federal sentence and relies upon the rationale set forth in Weekes v. Fleming, 301 F.3d 1175 (10th Cir. 2002), cert. denied, 537 U.S. 1136 (2003). In Weekes, the defendant was arrested on drug charges by state authorities on April 20, 1994, and charges were filed. He was then taken into federal custody on May 16, 1994, and pending state charges were thereafter dismissed, leaving only the federal charges against him. Weekes was transferred back to state custody on May 25, 1994, to appear for a probation violation proceeding. His state probation was revoked, and he was sentenced to 2 to 5 years imprisonment by the state authorities. Weekes was then returned to federal custody and received a sentence of 188 months incarceration on the federal charges. Weekes, 301 F.3d at 1177-78.

Weekes was designated to begin serving his federal sentence on February 21, 1995, and he was received at FCI Lompoc on March 24, 1995. After his arrival at FCI Lompoc, BOP staff determined that Weekes' federal sentence was intended to be served consecutively to his state sentence. Thus, Weekes was transferred from his designated federal institution to state custody. This occurred on April 20, 1995. Weekes was released by the state and given back into federal custody on April 18, 1999. In calculating Weekes' federal sentence, the BOP did not give Weekes credit for any of the time spent in state custody. Id.

The Court of Appeals for the Tenth Circuit determined that Weekes' federal sentence "commenced" upon, and continued to run from, his designation for assignment to FCI Lompoc on February 21, 1995, since the federal authorities had primary custody over Weekes at the time the

5


federal sentence was imposed. Id. at 1181.  The Court then addressed the question of whether "the United States may interrupt the service of a federal sentence without giving the federal prisoner credit on that federal sentence." Id. at 1180.  Recognizing the general rule that "unless interrupted by fault of the prisoner . . . a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it," the Court held that, because Weekes had been under the primary custody of the federal government when he began serving his federal sentence, the federal government made a mistake in returning him to state authorities. Id. (citing Dunne v. Keohane, 14 F.3d 335, 336 (7 Cir.1994)).  Thus, although both of the sentencing judges intended for Weekes to serve his sentences consecutively, the Tenth Circuit relied upon the "continuous service" rule to credit Weekes with federal time served for his stay in state prison. Id. at 1181-82.

The Weekes analysis is, therefore, dependent upon two findings: (1) federal authorities had primary custody of the prisoner; and (2) while this was the case, the prisoner began to serve his federal sentence before being returned to state custody.  Neither of these findings can be made in this case.  "As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." U.S. v. Cole, 416 F.3d 894, 897 (8th Cir. 2005); Chambers, supra.  Petitioner was first arrested by Commonwealth of Pennsylvania authorities on February 2, 1993.  Even if, as Petitioner asserts, he was released on bail, he was again arrested by Commonwealth authorities on February 10, 1993.  Petitioner argues that these charges were dismissed in favor of federal prosecution on February 19, 1993.  While this is true, additional charges were filed by the Commonwealth of Pennsylvania on February 19, 1993, which were not then dismissed.  "Primary jurisdiction continues until the first sovereign relinquishes its priority in some way." Cole, 416 F.3d at 897.  In fact, the controlling factor on which a sovereign may proceed is actual physical custody of prisoner. Id.  Therefore, Pennsylvania authorities obtained primary jurisdiction over Petitioner on February 10, 1993, and there is no indication in the record that the Commonwealth relinquished that jurisdiction at any time prior to petitioner's arrest on federal charges in March 1993.  Therefore, this case is readily distinguishable from the facts in Weekes since the first requirement, that of primary federal custody, is not met.

Petitioner also cannot establish that he began to serve his federal sentence before being sent back to state custody. The Pennsylvania court imposed its sentence on February 1, 1994, and the federal sentence was not imposed until April 15, 1994. Petitioner was returned to state custody immediately upon the imposition of his federal sentence. Thus, Petitioner was not designated to a federal institution to begin serving his sentence as was the case in Weekes, and there is no issue in this case of Jackson's service of his federal sentence having been "interrupted."

Further, even if Petitioner were correct that primary jurisdiction rested with federal officials at one or more points after Pennsylvania took him into physical custody, and even if he had begun to serve his federal sentence prior to being returned to state custody, other courts have not enforced the continuous service rule as strictly as did the Weekes court. In Free v. Miles, 333 F.3d 550 (5th Cir.2003), the Fifth Circuit addressed a similar situation to that presented in Weekes. In Free, the Petitioner, who had been serving a state sentence, was transferred to federal authorities by way of a writ of habeas corpus ad prosequendum to be sentenced on federal charges. Following sentencing, Free was immediately sent to a federal facility, where he remained for 6 months. At that time, federal officials realized that they had made a mistake and that Free should have been returned to the Texas Department of Corrections to complete his state sentence before starting to serve his federal sentence. Free then filed a habeas corpus petition asserting that, because his federal sentence had "commenced" on the date that he had originally-and erroneously-been delivered to the federal facility, his federal sentence should be credited with all the time served after that date, including the two years he spent in state prison. Free relied upon the same argument proffered in Weekes, to wit, that a prisoner is entitled to time served when he is incarcerated discontinuously through no fault of his own.

The Fifth Circuit, rather than treating the continuous service doctrine as a bright line rule, adopted a flexible approach based upon the purpose of the rule, that being "to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations." Free, 333 F.3d 554. Specifically, the Court looked at the intention of the sentencing judges to impose consecutive sentences and held that the continuous service rule did not apply because "[i]t [was] apparent from the record that Free's

7

*total* time of incarceration in both federal state prisons has *not* been-and will not be-increased by even a single day as a result of his mistakenly serving the first six months of his federal sentence prior to completing the service of his state sentence." Id. at 555.  The Court concluded that it was "of no moment" that Free served his sentence "in two shifts between sovereigns rather than one" because he ended up serving "the correct total time of his *consecutive* state and federal sentences." Id. This approach prevents the continuous service rule from becoming a "get out of jail early" card for prisoners. Id.

In fact, the Tenth Circuit has recently had an opportunity to revisit Weekes, and has determined that, where a federal court obtains a state prisoner "on loan" pursuant to a writ of habeas corpus ad prosequendum, the Weekes decision is simply not applicable. U.S. v. Binford, 436 F.3d 1252, 1256 (10th Cir. 2006).  Moreover, Free is cited with approval in Binford.  The ruling in Weekes has, accordingly, been limited to its facts.

As evidenced by the record, including Petitioner's own pleadings, Petitioner's period of incarceration has not been extended in any way due to an erroneous transfer to state custody.  In fact, Petitioner was in primary custody of the Commonwealth of Pennsylvania at all times from February 10, 1993, until his release on parole in September 2004.  He was "borrowed" from Pennsylvania custody for his federal trial and sentencing, and was returned to Pennsylvania custody each time.  Hence, Petitioner is serving multiple, consecutive sentences, as ordered by the sentencing courts. The "continuous service rule" has no application here. Morever, even if the rule did apply, we agree with the admonishment in Free that the continuous service rule should not operate as a "get out of jail early card."  Therefore, we find that relief is inappropriate.

## CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied.[2]

---

[2] Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

      /s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
UNITED STATES MAGISTRATE JUDGE

Dated: November 30, 2006

cc:    The Honorable Sean J. McLaughlin
       United States District Judge

       Grady Jackson
       46597-066
       FCI McKean
       P.O. Box 8000
       Bradford, PA 16701

       Christy Wiegand, Esquire
       United States Attorney's Office
       700 Grant Street, Suite 400
       Pittsburgh, PA 15219